Good morning. When your case is called, if you represent the appellant, let us know what your rebuttal time is, even if you've already advised the clerk. And with that, you may call the first case. Case No. 13-2571, R. Paul Mayhue v. Cherry Street Services, Inc. Oral argument not to exceed 15 minutes per side. Mr. Green for the appellant. Good morning. You may proceed. Good morning, Your Honor. I have reserved five minutes for rebuttal time. All right. This appeal is based on two prongs. The first prong was that we were not allowed to have complete discovery. We, for some reason, ran into a conflict between Federal Rule Civil Procedure 34 and Western District of Michigan Local Rule 7.1 and its interpretation. I'll give you an example. We had asked for, under the request for production of documents, something as simple as the budgets because one of the defenses that the defendant had put forth in their answer was that there were budgetary reasons for the reduction in force. So, of course, we wanted to look at the budgets. We wanted to be able to use them in depositions. And all we got was a blanket refusal to produce them. So at the hearing, the judge, Judge Magistrate, asked, well, had you picked up the phone and called them and asked them why they were refusing? And I replied, well, no, I had not. I did not believe that was necessary, that they needed to comply with the Federal Rule Civil Procedure Rule 34, which says they were to produce them. Well, at that time, they came up with a very interesting argument that they were protected, but they never made that argument in their reply and their refusal to produce them. If they had have, I would have picked up the phone and said, well, what do you need? But they basically just said that they weren't going to give them. Yet, in their motion for summary disposition, they are completely citing the budgetary rules. The district court judge below also relies upon it. Another example is, and not to go through my brief, but was I asked for communications for a short period of time that from 1 of 2010 through March of 2011 pertaining to my client. The reason this request came about was because they had stated in there, again, that there was problems after he had sent out an email in the staff. So I wanted to be able to explore this and to be able to take a look at just what had taken place. And that was just blank, completely said no. The judge magistrate said no, that it was too broad, even though it pertained to a very short period of time, about a year. Counsel, may I ask, what exactly was your question? What question do you feel that you posed that the court said was too broad? I requested that the defendant produce email communications between the staff relating to Paul Mayhew from the period of January 1, 2010 through March 1, 2011. So it's a narrow, it was a narrowly focused timeframe and only pertaining to the one person. How many months, from 10, all of 10, plus 3 months of 11? That's correct. Wow, 13 months of any email that has anything to do with this gentleman. Well, that's correct. This was, with computer technology. The court said it was overbroad. Correct. And your response to that is? My response? How did you attempt to narrow it? How did you seek to appease the court so that you could get something more that you thought you needed? Well, what happened is, when doing the discourse, I tried to explain to the court that this is a computer search. You can search on key phrases. This is not manually going through and looking. It's a matter of just putting in a key phrase and letting the computer do the work. This is not an overbroad search in the sense that... This would be the decision by the magistrate judge, I take it you still were with the magistrate judge? I was. I also... What did you do? What did you see by this court on what standard of review? Well, I actually put in my brief that it would be for an abuse of discretion, even though the motion for summary disposition that relied upon this data is de novo. The district court accepted, pretty much without any supporting evidence, that there was discourse among the employees. Yet, I was not allowed to look at that and to be able to determine and put forth evidence whether or not it was. Therefore, we were... You looked at it as a phishing expedition, didn't it? I mean, I assume that's what the result was? No, not a phishing expedition. So you have to give us something more? Not as a phishing... Narrow it. Sorry. Sorry, your turn. Okay. I learned from Judge McKee not to speak years ago. There you go. It wasn't a phishing expedition. It could very well have led to discoverable information. And if you're claiming that there is discourse among a body of employees, and this is being expressed through e-mails, then to discover these e-mails can and would have led to discoverable information, and I would have been able to have used that information in further preparing for and going forward. I don't think a phishing exposition would have been saying, give me all the e-mails between this period. Maybe we should look at the other difficulty I have with your appeal, and that is that there's the employer's put forth non-discriminatory reasons for the reduction in force. Well, I... You were never able... I gather that your argument is, I wasn't able to search behind that and find out whether it was legit. Well, I think it was a pretext. We have an employer who calls in an employee who is 63 years old and suggests that he retire. Well... Okay, now that ended up... Is he the only one? Well... I thought it was a group of employees. No, there were three, but two of them, they had retired... they were clerical staff. They were clerical staff that sometime earlier in the year, and we don't know when because that never came out, but we believe it was at the beginning of the year, had been let go. But now we are into December, and this management individual who's been with the company for over 20 years, closer to 30, is called in and told that we no longer have funding to continue your position. Well, the... First of all, the amount of time that was between the initial laying off of the two employees and the end of the year would say that no, it's not happening simultaneously with a group of individuals. There's almost a year in between their initial actions and when they call him in. Secondly, then there are e-mails between the director and the president of what was at the time called Touchstone & Reary. They merged with Cherry Street in 2011 after this had gone forward, saying that, you know, Paul is 63 years old, and his retirement, we would give him as a severance package $100 for a year for 32 years of $3200. So clearly they are looking at retiring Paul. Isn't it also true, Counselor, that they said to him at the time, I mean, they made efforts to keep him. That could account for the difference in time between the younger employees that were let go and he was kept on. I mean, they were trying to figure out how to keep him. And finally they said, we're out of funds. This is a non-profit. You say company, but this is a non-profit agency. And finally they say to him, we don't have the funds to let you stay in this non-revenue producing position that you're in, but we definitely let you apply for any opening that we have. And he didn't. Well, Judge, the reason that doesn't carry weight, in my opinion, is because of them offering him to stay in the position and to be added to the portfolio increased productivity. So all of a sudden there's funds there to continue him in the position by adding another task, which he readily agreed to do. That's not my question. The question was that they knew they couldn't fund that anymore. So they say to him, we've got openings here. You can be a case manager. We've got this, we've got that. We've got revenue producing positions. Why don't you apply for one of those? And he didn't. The case manager position is an entry-level position that he has spent the first 20 years of his life at the agency doing. Remember that it's a serious demotion for somebody who's now in management and who is attempting to... He was very willing to take a lateral position. Then they offered him or discussed with him taking over productivity, and at that time a management position came up, but he was still in the discussions of taking over productivity at that time, so he focused on the productivity. And I see my time is up. Yes? Yes, I know your time is up. Just one question on the discovery of the budgets you had requested to be turned over. I guess the court said that you could have them, but there should be a protective order. Was anything done between... Why did you and the other counsel... Why were you unable to get together to have the protective order entered so you could get those budgets? What was the breakdown there?  This happened, that order came through on the 20th of May. Discovery ended at the end of May, 30 or 31 days of May, and there wasn't time to, at that point, still be able to get that in and get them analyzed. Well, if the judge had ruled that you could have the budgets, seemingly that would supersede the discovery cutoff deadline and you could still get those, wouldn't that be correct? No, because I specifically asked him to extend discovery, where I would be able to use those budgets in questioning the individuals who had prepared them, and he absolutely flatly refused to extend discovery. And let me just add one more thing, if I may. Just seven days before this hearing is the first response from requests for production that I received, and what I received was a stack of 80-some papers. They were not labeled. They did not state which of the interrogatories or which of the requests for productions they were... Yeah, I know about that, and the court, for reasons I'm not quite sure I understand, said that that was just fine because he doesn't know of any, the judge didn't know of any rule that required the documents to be matched with the request, so you would know what it was that you were getting. But also, one final question. Your opposing counsel seems to complain that you let quite a number of months go by before you started attempting to get discovery, and so he's kind of trying to blame a lot of these discovery problems on that in terms of the delay. What was the reason, or why did it take you a number of months to get going on the discovery? Let me just say right off the bat that I probably should have got moving a little sooner. I will say also, though, an explanation that they beat me out of the starting gate, and they hit us with a lot of discovery, and we spent a lot of time responding to it, and then they filed a motion to compel stating that one of the things they wanted were his health records, and we said there's no health questions here. We went and the judge partially agreed to grant it and denied their motion, and he did not allow them to get the health records, but he had me to expand on some of the answers I had given, the very thing that I thought he would do and not just basically say, well, you should have picked up the phone and you should have called them and you should have negotiated this. My understanding of the local rule was that before you filed a motion, you were supposed to contact opposing counsel and ask them if they would agree to the motion or if they were opposed to it, which was done. This is the first time in front of any of the magistrates there, and don't get me wrong, I think the magistrate there is a super magistrate. He's retired now, but I would have listed him as one of the smartest people I know. I don't know what happened that day. All right. I think we have your argument. We'll hear from your opposing counsel. You may proceed, counsel. May it please the Court, Ryan Gronzek for Appalachia Cherry Street Health Services. I'd like to start with the district court's grand summary judgment. Let me ask you about these discovery problems. Some of the discovery requests you sent in or your client, you would send a bunch of documents and you're not indicating which documents were in response to which discovery requests and that kind of thing. Why did you do that? When we sent documents to Mr. Mayhew's counsel, there were 83 documents responsive to his discovery requests, and we produced all of those. We neglected to specifically identify which documents were responsive to which request. We didn't realize that was a problem for him until we heard that in the motion to compel, and then in our response to the motion to compel, we identified the documents. We said, these are the documents that are responsive to interrogatory number one. These are the documents that answer your question here. So we took care of that in our response to the motion to compel. Had Mr. Mayhew's counsel ever reached out to us and said, hey, I've got a problem with these responses, you didn't identify the documents, we certainly would have done it earlier. But because we didn't hear from Mr. Mayhew's counsel until April 29th, I believe, when he filed his motion to compel, it took us two weeks to get a response out. So that was the first time we were able to say, hey, these are the documents. That may have been our error in not identifying those documents at the time, but we resolved it. Why were you not able to get together with your opposing counsel about the protective order and get that in it so you could get the budgets turned over? There was something in the record that seemed to indicate that the task of doing the protective order was placed on plaintiff's counsel, which I didn't quite understand, because you as the defendant know what it is that you want to protect. So normally I would expect the defendant to draft the protective order, since you know what it is that you want protected. And it seems like that never got done and the budgets never got turned over. What was that all about? Well, Your Honor, we offered, as you stated, we offered to produce those budgets if Mr. Mayhew would draft the protective order. No, you objected and you didn't produce them. And then you went to court and the judge says, why don't you turn them over and you can have your protective order, and that's when things broke down. Well, they broke down a little before that. We objected because we did not believe that the budgets were relevant. This wasn't your traditional reduction in force where business is bad. As the panel noted, this is a nonprofit. The reason for this targeted reduction in force is because we lost a government grant that was supporting these non-revenue generating positions. So Touchstone's budgets weren't really relevant to the reason Mr. Mayhew was laid off. So we objected and stood on it. We believe that was a fine objection. That's not the issue here. You agreed to turn over the budgets to the court, ordered them to be turned over. I'm not asking about all that. I'm asking about why wasn't the protective order in it and the budgets turned over. That's the only thing I'm trying to get from you. Right. We asked Mr. Mayhew to draft the protective order, and we assumed he would do that. He never did. He never came back to us. Throughout the discovery process, we had a lot of difficulties. As the district court noted in its, or I'm sorry, as the magistrate judge, I believe it was the magistrate judge noted, it seemed like a lot of Mr. Mayhew's tactics were intended to drive our litigation costs up. So we were hesitant to dive in and draft the protective order and then take on the process of bird-dogging him and make sure it got signed and make sure it got entered when we didn't believe these documents were relevant and he's the one who wanted these documents that we viewed as irrelevant. So we thought it should be on him, and there simply wasn't any. You were still trying to drag the thing out after you had agreed or the judge had ordered that they be turned over. We were not. We expected Mr. Mayhew to draft. We represented to the judge that we would turn them over if Mr. Mayhew's counsel drafted the protective order, and he simply never did, Your Honor. We weren't trying to drag it out at all. Well, it was your documents you wanted protected. That's accurate, Your Honor. So why weren't you all tasked with drawing up a protective order? Well, we weren't tasked with it, and Mr. Mayhew's counsel never asked us to. So, again, this goes back to a breakdown in communication. We were never asked to draft the protective order. We volunteered to produce them if Mr. Mayhew would draft the protective order, and then that simply never happened. What I think these documents go back to is a key thing I think is necessary to keep in mind about these documents is they had no bearing on this litigation, even if we had produced them, even if the district court did err, which I don't believe it did, in not ordering us to turn those documents over right that very day. How would your opponent know that they didn't have any bearing? You didn't ask the judge to review them in camera to see if they were relevant to the litigation or anything like that. You were just satisfied to fight as to whether you were going to turn them over. That's why we volunteered to produce the budgets with a protective order. And then your opponent asked for the e-mails pertaining to his client for a very short time frame, recent e-mails, and you just say it's overbroad and leave it at that and just refuse to turn over. I mean, everything is a fight about everything on all this discovery, and I don't know why the two sides couldn't be more cooperative than they were. This was a very contentious discovery process, Your Honor. As Mr. Green noted, we went through our discovery phase. We had to send multiple letters where we very specifically explained everything we thought was wrong with this discovery request and asked them to remedy it. That resulted in a motion to compel. Mr. Mayhew's counsel never came to us and never said, hey, this is what I think is wrong with your discovery responses. He came to Mr. Kilby, touched on his trial counsel on April 1st, and said, please waive all of your objections was the fundament of that conversation. Kilby asked him to elaborate what objections, why should I waive them, what is wrong with our responses, help me out here. Mr. Green again repeated the request to waive them all. Kilby declined. Had we received a letter saying, hey, or a phone call or an email, anything saying, hey, this is what's wrong, this is what we need, this is how we want to narrow our request, that request Mr. Green described in his argument as a computer search. It's a lot more than a computer search. Well, you were trying to slow things down, too. The man asked for documents, and you give a bunch of documents, and you're only going to say which documents go with which is in response to which request. He asked for some emails that are very compressed in time, and you just say, and pertaining to his client, instead of just turning this stuff over, you just say, you're not going to do it, it's too broad, and leave it at that, and then you fight him in front of the magistrate judge and all that. All that was, to my way of thinking, totally unnecessary. It's a small company, there are not many records, you're only dealing with one employee, and you couldn't turn over that small amount of documentation pertaining to this one employee? It wasn't a small amount of documentation, Your Honor. He asked for every email pertaining to Paul Mayhew. That would encompass a broad number of emails. That would have required significant litigation costs. Well, all you had to do is say, look, we're going to give you emails pertaining to any discussion about your client's employment status, and we're only going to give you emails, not from the entire staff, but from management, supervisory people. Would that be satisfactory? You didn't do that. You just said, you didn't do that. We turned over documents that were... You didn't do what I just said. Well, we didn't do exactly what you just said. You didn't do anything near what I just said. Well, I think what we did was in the spirit of what you just said. We turned over the documents that were relevant, that had to do with Paul's discharge. We turned them over. We turned over the employee response to Mr. Mayhew's email that Mr. Green referenced in his oral argument. We turned over the documents that were relevant and responsive to Mr. Green's... Let me ask you this. Did you ever turn over any of the budgets? We did not. Okay, so let me see if I've got this in my head. And you're telling me that none of those budgets were relevant. Is that right? That's correct. So here's a man that comes in as a case manager. He's being salaried. He's got a revenue-producing position. And then the nonprofit gets a grant to help the homeless find homes. This is not revenue-producing, but it looks like something that he would be good at. And so they put him in charge of this part of the services that are provided. And then they lose the contract, the grant on that. It goes to the Salvation Army instead of Cherry Street Services. Well, they don't want to lose Paul Mayhew, so they have to find something else for him to do. They've got some money in the... They're flush at this point. They've got some extra funds. And they create a position for him, government relations coordinator, to take advantage of his skill sets. But they tell him at the time, look, this is non-revenue-producing. This is only going to last as long as we've got the funds in the coffer to be able to pay you to do this. And when times got tough and those funds no longer existed, that's when they come to him and say, this is it. We can't pay you anymore to do this. We don't have the extra funds to do it. Now, why wouldn't the budgets be relevant to that question? Were they really out of extra funds, or was this a pretext to get rid of him? It seems to me at that point the budget, at least for that year, becomes very relevant. Well, that may be, Your Honor. And that may be why Mr. Kilby changed his mind and offered to produce it with a protective order. But his view at the time was that Mr. Mayhew's funding was based entirely in the grant. It was the grant that allowed us to fund that position, not Cherry Street's budget. No, the grant disappeared when it went to the Salvation Army, didn't it? Right. And then the nonprofit was carrying him, if you will, in this position of government relations coordinator. And then they say, that money isn't there anymore. And he says, I want to see the budget. I want to make sure you're telling me the truth. The budget becomes very relevant at that point. And maybe we should have prepared a protective order and produced that budget immediately, Your Honor. But what it goes back to is Mr. Mayhew couldn't even make his prima facie case. There was no direct evidence of age discrimination here. There's no circumstantial evidence of age discrimination here. We never even get to pretext, because Mr. Mayhew can't establish that he was replaced by a younger employee or that there was any additional evidence of discrimination. There's no evidence in the record which Mr. Mayhew admitted at his deposition that he was replaced by anyone else. There is no government relations coordinator at Touchstone to this day. Mr. Mayhew mentions this productivity position, which he believes still exists, but it doesn't exist. All he says is that it defies credibility that this productivity position wasn't created. He can't make his basic threshold case, so we never get to the question of pretext, because he can't establish that he was replaced by anyone. So even if the budgets do speak to pretext, which I don't believe that they do, even if they do, we don't reach pretext because Mr. Mayhew can't make that basic element of his case. Mr. Green also stated in his argument that the other three positions that were cut were clerical staff, and that's simply not accurate. We cut one coordinator, one program nurse, and an advocate position. None of these were clerical staff. A coordinator is the same level position as Mr. Mayhew was. The fact remains that all four of those positions were non-revenue generating, and when we lost the grant, we couldn't continue to fund those four positions. I think what this case comes down to in the end is the fact that Mr. Mayhew can't establish that he was discriminated against. He can't establish that he was replaced by anyone, let alone a younger employee at Touchstone, and he simply can't establish that Cherry Street was trying to get rid of him. Cherry Street did everything it could to keep Mr. Mayhew around, and I believe that's why the district court was correct in granting summary judgment in favor of Touchstone. Thank you. I'm looking now through my materials. Isn't the prima facie case requirements for a reduction in force a little different from the normal age discrimination? Yes, Your Honor. And the fourth prong isn't necessarily that he was replaced by a younger person. He wasn't replaced by a younger person or additional evidence of discrimination of some sort, which he doesn't have. There is no additional evidence of discrimination. The only evidence he points to is an email from Touchstone's president to Margaret Chappell stating something about he's 62. One of his options is retirement, and if he retires, he can have a certain bonus based on his years of service to the company. That's not evidence of age discrimination. That's simply one of the options that was on the table. In the context of that conversation, there's no discrimination there, Your Honor. Okay. Thank you. Thank you. I'll pick up right there, and that's just not accurate according to the law. If he had just said, why don't you retire, that would not be evidence of age discrimination. But when you add in the age of the person at 62 being at a retirement age... What your age is is no secret. And, you know, you have to reach a certain age to be eligible for early retirement. So is he 47 or is he 62? He's 62. I don't see your point about that. I'm sorry. I'll try to make it clear. It shows that they are considering his age as part of the reason for what they're doing. Isn't the concept of retirement inseparable from one reaching retirement age? Well, I... You can't retire when you're a newbie, can you? No, you cannot. You can't retire at 47. They're inseparable, aren't they? I'm afraid. Well, I'm just referring to case law from the circuit where the combination of the two met the threshold where, one, if you just referred to retirement or retiring did not, but when you referred to retirement and you brought in the individual's age, then it did meet the threshold. And, therefore, that's where that premise is from, and I think I cite that. I wonder if you know which case that might be. I had a minute to go through my brief. Search for it if you don't have it at hand. I don't want to... I believe it's Hale v. ABF Freight Systems, 503 in the federal appendix 323. Okay. Okay. Okay. Just one more statement about the budgets. Policing counsel wants to say they're relevant, but they're cited by both the president and his declaration. They're cited by the two, the administrative Corliss-Claiborne and her declaration. They're cited as reasons in the district court's opinion for why he found the way he did. Therefore, they're very relevant. And the fact that we should have been allowed to have not only had them, but we should have been able to question the individuals pertaining to them. We were basically waiting to take depositions until after we received our discovery, and we just didn't get it. The 30 days from response when we filed our motion had passed. It had passed when I spoke to Attorney Kilby in April. On April 1st, it had passed. And I did not ask him to waive his objections. I asked him, was he going to supplement his discovery? And if he wasn't going to, would then he agree to a motion to compel? And that's what Rule 7.1 requires you to do. I've never understood Rule 7.1, and I've never had it interpreted in the Western District of Michigan to mean that you're supposed to go now and negotiate what they'll give you once you've filed a Federal Rules of Soil Procedure Discovery Request under Rule 34. That's never, ever been the case. And so for opposing counsel to stand here and say you should call me and say, well, what will you give me? Well, give me what I asked for. I mean, that's what I believe the rules required them to do. That's what they did not do. They tried to mitigate. Didn't you have a pre-trial discovery order from the court regarding how to conduct discovery and other matters, other pre-trial matters, because those pre-trial orders usually have a provision in there that says that counsel should talk and meet and confer and attempt to resolve any discovery disputes. Did you look at the pre-trial order? There is a case management order. It's always, and I believe that's what you're referring to as a pre-trial order. I'll be honest, Your Honor, I don't remember if that language is in there or not. And it's interesting because I did look at it to get some dates out of it this morning in reviewing my notes, but I do not recall if that language is in it or not. But it is part of the record that is before the court. I believe that they deliberately set out to obfuscate discovery to keep us from being able to get the information that we requested. I believe we were prejudiced because of it, and I would ask that, at a minimum, you remand this with an order for us to be able to complete discovery, and then, based on the information that they provide, like the budgets and things, that we be able to take the depositions of the officers pertaining to those budgets. Thank you. All right. Thank you very much. The case is submitted.